[Civil No. 4659. Filed July 31, 1943.]

[140 Pac. (2d) 228.]

ARIZONA TEACHERS' RETIREMENT SYSTEM, Petitioner, v. ANA FROHMILLER, State Auditor, Respondent.

Mr. Joe Conway, Attorney General, and Mr. Earl Anderson, Chief Assistant Attorney General, for Petitioner.

Mr. Phil J. Munch, for Respondent.

McALISTER, C. J.—This is an original proceeding in this court by the Arizona Teachers' Retirement System asking that an alternative writ of *mandamus* issue against the State Auditor commanding her to pay the claim of Georgie Hunter for $34.50, the expense incurred by her in attending four meetings of the board of trustees of the Arizona Teachers' Retirement System, or show cause why she has not done so. In the respondent's return she moves to quash the alternative writ upon the ground that the claim is not one for which she may legally and properly draw a warrant against the state treasurer out of the expense fund provided for in the Arizona Teachers' Retirement Act of 1943.

The facts may be stated as follows: Georgie Hunter was appointed one of the five trustees of the Arizona Teachers' Retirement System. She attended meetings of the board in Phoenix on June 13 and 14 and again on June 21 and 22, 1943, and incurred an expense of $5.00 per day while so doing. She lives in Jerome and traveled 290 miles in making the trip from there to Phoenix and return, for which she was entitled to five cents per mile of $14.50. She filed a claim amounting to $34.50, with respondent for these two items and the respondent rejected it upon the ground that she could "find no appropriation for payment of any money previous to July 1, 1943."

In support of the claim the petitioner points out that Chapter 61, Laws of 1943, was passed as an ordinary measure and under subdivision (3), section 1, part 1, Article IV of the Constitution became a law on June 12, 1943. The whole context of the act shows it was contemplated that while the law went into effect on June 12, 1943, the teachers' retirement system should set up the machinery for placing the law in full force and effect on July 1, 1943. This, it is said, is plainly evident from the provisions requiring the appointment of a board of trustees, the employment of an executive secretary, actuaries and other help, and certainly the legislature did not intend that the system should go into operation on July 1, 1943 without any machinery having been set up for its doing so. It follows from this that it would be necessary for the board of trustees, under whose control the whole system was placed, to meet prior to the operative date of the retirement system for the purpose of making plans for placing it in operation.

Counsel for the petitioner, however, has cited no section of the law making an appropriation covering the expenses of the trustees, or anyone else, for the period prior to July 1, 1943, and, in fact, those who filed the claim did not feel that an appropriation has been made covering expenses prior to that time, for in filing it they only asked that a ''Certificate of Indebtedness'' be issued so that a deficiency appropriation would be made therefor at the next session of the legislature. An examination of the retirement act does not disclose any section making an appropriation covering any expenses prior to July 1, 1943, even though it may have been ever so necessary. Section 30 (b), which is the section providing for the payment of expenses after July 1, 1943, makes no reference to any expenses incurred prior to that date. The trustees were appointed on June 13, 1943. They

qualified and met on June 14, 1943, in accordance with the provisions of section 18 of the act. Pursuant to section 15 (i) of the act, the board of trustees, prior to July 1st, certified to each county school superintendent the amount which became due and payable from the county on the earnable compensation of all employees within the county. These were duties that the law itself required the trustees to perform before July 1st, and for which thy should be paid, but inasmuch as no appropriation was made to cover the expenses of the meetings prior to that date the trustees are entitled to ''Certificates of Indebtedness'' covering them. The auditor is directed to issue ''Certificates of Indebtedness'' covering these expenses.

The motion to quash the alternative writ is granted.

STANFORD, J., concurs.